MADDOX, Justice.
The primary issue presented by this appeal is:
Does a mortgagee/lender, which closes “in house” its own mortgage loan, assume a contractual, fiduciary, confidential, or other legal duty to represent the mortgagor/purchaser’s interest at the closing?
The trial court granted summary judgment to the mortgagee/lender.
The undisputed facts, shown by affidavits and depositions, filed in support of the motion for summary judgment are:
The Kemps entered into a real estate sales contract to purchase a newly constructed house from the builder/vendor who was represented by Belview Realty Company, which suggested that the purchasers apply to Jackson Mortgage Company for permanent financing. Jackson Mortgage allegedly held itself out to the public as a mortgage lender which would save its loan applicants the expense of an attorney’s fee at its closings. In other words, at the builder/vendor’s election, the Kemps would acquire an owner’s title policy and Jackson Company would acquire a mortgagee’s title policy. The total expense of procuring the two policies was to be divided equally between the seller and the purchaser.
Jackson Mortgage receive a title insurance commitment from Chicago Title Insurance prior to the closing. This commitment required what is known as a “Lien Waiver” to be executed by the builder/vendor of the house. The “Lien Waiver” constituted proof that all bills for labor and materials had been paid in full and would enable Jackson Mortgage to receive title insurance protection against unfiled mechanic’s liens. The purchasers would not receive such coverage, and, in fact, they were subject to a right of subrogation in the title insurance company for unfiled mechanic’s liens.
Jackson Mortgage prepared all documents which would be necessary to close the loan and the sale, including a note, mortgage, vendor’s deed, sales closing statement, “Lien Waiver,” and other documents. The mortgage which the Kemps executed contained the usual warranties of title, including a warranty that the property was being mortgaged by them free and clear of any liens. The builder executed the “Lien Waiver,” even though the title insurance commitment revealed that one mechanic’s lien notice had already been filed against the house. The Kemps did not, at that time, know about the outstanding lien.
Subsequent to the closing, Alpha Lumber Company filed the original action in this case to perfect its mechanic’s lien on the Kemps’ house. The Kemps also received notice from several other mechanics who were also pursuing liens against the house; however, these claims were not perfected. No one would agree to defend the Kemps against these lien claims; they filed the cross-claim against Jackson Mortgage in the Alpha Lumber lawsuit, and joined others, including the builder, its president, and the title insurance company. The title insurance company has paid every mechanic’s lien claim, and has agreed not to assert its right to subrogation.
The Kemps, in their cross-claim against Jackson Mortgage, claim that Jackson Mortgage contracted with them and undertook employment which required it to exercise that care and skill appropriate to the employment, and that Jackson Mortgage breached its obligation, in that it failed to tell them that there were probably outstanding mechanic’s liens which had not been filed at the time of closing. They also claimed that Jackson Mortgage, under the circumstances, illegally and unlawfully en *17 gaged in the practice of law under § 34-3-6, Code of Alabama, 1975.
Jackson Mortgage says that the evidence submitted in support of its motion on summary judgment, shows that there was no duty, as a matter of law, for it to provide the Kemps with legal advice concerning every matter that could occur after the closing. It contends that no contractual relationship, in fact, existed, and Jackson Company says that it had nothing to do with the making of any agreement other than the one between it and the Kemps to make the loan.
Jackson Mortgage says that it made no misrepresentations and that it had no reason to question the truthfulness of the “Lien Waiver,” signed by the builder/vendor.
The Kemps contend that summary judgment was inappropriate because they submitted counter-affidavits from two experienced loan-closing attorneys who each stated that:
“It would not have been prudent under the facts alleged in the pleading for Jackson Company to have simply accepted a lien waiver from the builder without making further inquiries as to whether or not there were any mechanics who had not been paid. Builders commonly execute a lien waiver at a closing when they have unpaid mechanics. The reason is that builders generally do not have all of their statements in from their mechanics by the time of the closing and sometimes they are running short of cash and have not been able to pay their mechanics pri- or to receiving the sales proceeds. I would be quite surprized [sic] to find anyone who had any experience in closing transactions on newly constructed residential property who did not know this.
“I would say that it would be unusual for a mechanics lien to be filed for record prior to the closing of a newly constructed dwelling. In my opinion, this would indicate to anyone competent to close the transaction that the builder was probably having financial problems. A question should immediately arise in the mind of the closing agent regarding the builder’s ability to payoff [sic] all of his mechanics, and some sort of inquiry as to the payment of the mechanics for that property should be made. The simple acceptance of a lien waiver which is routinely given at all closings by the builder, regardless of whether or not he had paid off his mechanics, would simply have been unacceptable procedure.
“I am advised that this was the first transaction Jackson Company had had with this particular builder. This certainly should have caused Jackson Company to be even more cautious about simply accepting a lien waiver from a builder with whom no prior dealings had been established.”
It is apparent that the opposing affidavits filed by the Kemps fail to comply with the requirements of Rule 56(e), ARCP which provides, in part:
“Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ”
In reaching the conclusion that the opposing affidavits are insufficient, we do not hold that the affiants were not competent as “experts,” only that their evidentiary affidavits were based upon the “facts alleged in the pleading. . . . ” This Court has approved the use of an opposing affidavit by an expert, but in doing so, the Court pointed out that the expert’s opinion, which was stated in the affidavit, was based upon a personal review by the expert “of voluminous material concerning the Defendant R. L. Reid, Inc.’s Motion for Summary Judgment.” Plant v. R. L. Reid, Inc., 365 So.2d 305 (Ala.1978).
It is abundantly apparent from the deposition and affidavits filed by Jackson Company in support of its motion for summary judgment that the cause of trouble was the false “Lien Waiver,” executed by the builder, under oath.
*18 We have reviewed very carefully the evidence in support of the motion for summary judgment, the statement of the facts in the Jackson Company brief, with which the Kemps “basically agree,” and the statements made during oral arguments, and conclude that Jackson Company was entitled to summary judgment.
AFFIRMED.
TORBERT, C. J., and JONES, SHORES and BEATTY, JJ., concur.